Good morning, your honors. May it please the court, Breonna Mircheff on behalf of Anahit Shatvoryan. Your honors, I intend to reserve about three minutes, but I'll watch my clock. Thank you. This case presents a relatively straightforward and effective assistance of counsel claim. And I say that because the district court found that Ms. Shatvoryan had established deficient performance, the first standard of Strickland. So, and the government doesn't ask this court to revisit that finding. So the only question presented to this court is whether that deficient performance affected Ms. Shatvoryan. Now, the district court's ruling on this point is somewhat terse, but there's two grounds stated for finding that Ms. Shatvoryan had not suffered any prejudice. The first ground is that the district court believed Ms. Shatvoryan had not established that she was reasonably likely to be able to show that the government would have offered a more favorable plea agreement. So I'll address that point first. Now, again, the district court doesn't give any reason. It simply states its conclusion, but we think there are three circumstances that establish that that finding was erroneous. Now, the first one is just the nature of the modification that competent counsel would have requested. It was a relatively minor request that defense counsel should have made. He should have asked that the government leave open the loss amount, but the factual basis still would have carried the government's burden of establishing the prima facie loss amount. So that modification was really only requesting an opportunity for the defense to take an onus on to attempt to rebut that presumptive loss. And so given the fact that the district court, or that the government agreed to a more onerous modification to the plea agreement during this second plea negotiation, we think it is reasonably likely that the government would have agreed to this modification. Well, let me ask you about that because, I mean, I was in AUSA once upon a time, and I was a criminal defense attorney once upon a time, and loss calculations can be very, very time consuming. Role is legal argument. Loss is different, and loss is a lot of work. And so why, other than just kind of surmise, what in the record suggests that the prosecution would be willing to go through that level of sentencing, as opposed to role, which is much easier to deal with? Well, I think that, I don't know that I have two answers. One is that, again, the government's work is done by the factual basis of the plea agreement. The government has met its burden by the factual basis that said that the amount billed to Medicare was $4.5 million. So the government wouldn't be taking an additional onus on itself. It could rest on the factual basis. Well, but hold on, but the other side is going to come back with saying, here are legitimate expenses, and the government's going to want to investigate those expenses, see if they're legitimate or not. I mean, it's a back and forth. So what, the only thing that the defense counsel would have been putting on is information about Ms. Chadforian's understanding of Medicare billing processes. It doesn't get into wild calculations about each of the different bills. It's really about her state of mind. And that, I would think, would be more akin to the aggravating role question than to some of the wild loss calculations that I'm sure your Honor saw in practice. Now, I guess the other point I would make is that we, in the reply brief, listed three different plea agreements from the same healthcare task force, from the same U.S. Attorney's Office, that did leave the loss amount open. On the same kind of theory about pop-up, I assume, Rodriguez-Vegas said that those kind of plea agreements are by themselves enough to establish a reasonable likelihood that the government would have offered a more favorable plea agreement. So between the fact that this was a relatively minor modification, that they and the fact that the same U.S. Attorney's Office has kept open the loss amount or agreed to a very broad loss amount calculation in similar healthcare fraud kind of cases, I do think it's a reasonably low standard. And I think Ms. Chadforian has met it in this case. Did the district court hold a hearing, the first go-around, before he did his sentencing? There, sorry, on the first habeas, the first habeas, did he, yeah, yeah, did he hold a hearing? I'm sorry. In the first 2255 proceeding, there was an evidentiary hearing in somewhat dramatic form at a break in that evidentiary hearing. GPS information arrived that contradicted all of the testimony that had just been presented. The hearing was adjourned and the part, the government withdrew its objection to the 2255. But there was an evidentiary hearing. Because again, the standard for an evidentiary hearing in these cases is relatively low. Well, and that's the question that I have here, is why didn't the district court hold an evidentiary hearing? And I mean, I guess that's kind of why we're here, but is there an indication, could he have relied upon, was there information that he'd already received that would have answered some of these questions? It seems to me this was a new question, though, that hadn't been addressed. Yeah. And the one thing to note here is that a different district court took over after the second sentencing. Judge O'Connell passed away. And so that, for that reason, the judge who had handled the first plea, the first sentencing, the 2255, the plea negotiation and the sentencing in the first case was not available to handle this 2255. And so I don't think we can say, well, she would have, there was some information presented at some other evidentiary hearing or some other proceeding that the court would have been relying on. This court, this was, this 2255 was the first thing that Judge Hatter handled in this case. Is there, so part of this is, as I understand it, is if on the record you haven't stated a claim, then you don't need to have a hearing. Is it permissible for us to find that the district court reviewed the affidavit that was submitted and took all that into account, including the Popov case and just said, look, none of this satisfies a reasonable view that there be a claim to change the sentence here and therefore he didn't need to hold a hearing? How do we assess that? So is it legally something this court could do? There's a way for that court, for that to happen. But in this, on these facts, this district court needed to hold an evidentiary hearing because the claims here were not so palpably incredible or patently frivolous that the court could say, I don't need to hear. Well, but that's the second part of the standard. And I think no one would dispute that. I don't even see the government disputing that, but they seem to be saying there wasn't a claim here. And that's my question is what discretion does the district court judge have absent a hearing to determine that there's no claim here? Popov is not the most clear case on how these things apply. Now, maybe that argues in favor of holding a hearing because it's not clear, but could the district court have said, look, I give, I'm giving her the credibility that she won't, you know, warrants that, that she only thought she was defrauding out of 1.7 million, but under Popov, I just don't think that's enough. So the district court, if he credited absolutely everything that Ms. Javorian said, I don't think he could have said that the claim was conclusively as a matter of law could not have been established because the standard from Popov, again, I agree it's, it's, it's still working itself out in other cases, but the question is, is there a familiarity with Medicare billing processes? And here, if you believe everything Ms. Javorian has said, she was the person who opened the mail, read the explanation of benefits, knew what the different columns on that form meant, knew that there was a fixed fee structure, knew that the forms advised people. Although that's not what she said the first, that's not what she said at the trial. She said she didn't know what was going on. And so there, there was no trial just to be clear. And at the first sentencing defense council said that she was not from a country where she was schooled in Medicare. Uh, I agree that there's some amount of tension between those two, though I don't think as much as, as the government would, would claim. And again, the government is in a bind here too, because they were the ones that sentencing saying she was right in the middle of all the billing processes. Beyond that though, I think there's, it would be concerning for this court to rely or for the district court to have relied on deficient counsel's statement at sentencing that wasn't in fact believed by the district court, right? If the concept of judicial estoppel requires somebody to believe what you say, if it's also from deficient counsel who we, I assume, had they been making the proper arguments would not have made the same assertions at sentencing. Would like to reserve a little time if there's other pressing questions. We'll give you two minutes. Okay. Thank you. Good morning. May it please the court. Joanna Bowman for the United States. The district court was well within its province to address Ms. Schafforian's claim without the need for an evidentiary hearing in this case, because she has failed to establish prejudice under Strickland's second prong. And in order to show prejudice here, Ms. Schafforian has to overcome two hurdles. First, she needs to establish by a reasonable probability that the government would have agreed to leave open the loss amount for argument at sentencing. And second, she needs to establish by a reasonable probability that the sentencing court would have found that she would have successfully rebutted the intended loss presumption. That is, she did not intend to receive the full amount billed to Medicare. To get a hearing though, she only needs to show the potential of a colorable claim under that standard, right? Yes. And I think with respect to the first hurdle, she does not meet that. She does not establish with a reasonable probability that the government would have agreed to leave this open in the loss amount. She points to no record, no evidence in the record suggesting that the loss amount was negotiable. Well, she does point to these three other cases where the government agreed to leave the loss amount open. And you have counsel that's in here and said, you know, we didn't even think to ask for it if you believe their affidavits because they didn't know about the Popov case. And so why isn't that enough to raise a doubt? It's not farfetched that they could have gotten this. Well, I think the fact that the government has agreed to leave the loss amount open in other cases does not establish that it would have done so here. Each case is judged on its own merits. There's a lot that goes into negotiation. As you mentioned, the loss amount is a difficult thing to ascertain. And I think the case she cites, United States v. Rodriguez Vega, is an apposite here. In that case, this court found that a defendant may demonstrate a reasonable probability of negotiating a better plea by identifying cases indicating a willingness by the government to permit defendants charged with the same or substantially same offense to plead guilty to a non-removable offense. And this is a two-level sentencing enhancement, not pleading guilty to a charge that would render the defendant automatically deportable. That's not the issue before the court here. But I mean, under your view of the standard, I guess I'm having trouble seeing realistically how a defendant could ever satisfy it. I mean, unless the AUSA is accommodating enough to submit a declaration saying, yes, I would have given them a better deal, what would she need to do? I mean, if her counsel would be able to testify that there was some sort of room for loss negotiation or some sort of, or there was ever discussions about that, I think. But there wasn't a discussion because, precisely because counsel was deficient and didn't think to ask for it. I mean, that's the whole problem. But I think here she cannot, this is her burden to establish, and she cannot show that the government would have been amenable to her. But I think that's the question. What would she have had to show, or defendants in this situation are just out of luck? I think there could be certain facts. Could she put a prosecutor on the stand and ask what they would have done? She provides no support for that. No, I understand. But I mean, that's sort of where you're headed. I mean, the government's position seems to be, look, there's nothing that you can present extra, you know, outside of the government's own mindset. And I think that's a dangerous road to go down because now you're going to get defendants who are trying to put prosecutors on the stand. And that's a really, I don't like that precedent either. No, and I don't think the government is willing to put their... But that's kind of all you're leaving us with. Well, counsel, let me ask you this. There are cases where there might be an initial plea offer, which is the best plea offer that's extended. And that's turned down. And over time, plea offers get harsher and harsher and harsher and harsher. I assume in a case like that, if there was version one of the offer, defense counsel could point to version one and say, see, look, in version one, they did leave it open. But then by two, three or four, now it's no longer open. That is something they could point to in terms of that would not require someone to get on the witness stand. Were there stages of negotiations in this case that they could point to? I mean, arguably, she's pointing to the first plea agreement, the fact that the government left open the organizer leader enhancement. But that's, as you mentioned earlier, that's a completely separate analysis. And the fact that they left that open is conclusively and speculative that they would have also left open... I mean, there are some cases where the government is never going to want to get into rehashing loss at sentencing. Take it or leave it. There are those kinds of cases. Although this one doesn't seem to be as contested on the loss. I mean, you really had two issues, either the amount billed or the amount that was going to come, that ultimately came in. Do I have that right? The 1.7 is actually what was recovered from... Or actually received, yes. Approximately 1.6, I believe. 4.5 was... Does the government concede that there was ineffective assistance of counsel here? No, the government does not concede that. Why didn't you appeal that? And can we decide that question? Could we... Is that before us to be able to say, listen, given the circumstances here, we don't think there was ineffective assistance of counsel here? Well, there's certainly evidence in the record that the government or that the defense counsel was familiar with the sentencing guidelines. In fact, during the plea colloquy, you can find that at record site 80, I believe, he points out that the loss amount in the agreement is based on Ms. Chapmarian's first 2255 petition that he drafted. He pointed out that her previous counsel were deficient for not knowing the sentencing guidelines. So certainly, he has made himself... He demonstrates that he's familiar with those guidelines. But can we... Do you think we have the ability on the current record before us to say that we don't think there was ineffective assistance of counsel? Or would that have required the district court to hold it evidentiary hearing as to that? We can affirm for any reason stated in the record. And the government can't appeal an issue, they can only appeal judgment. So I don't think it's contingent on the government appealing a finding by the court. The court found that there was no ineffective assistance of counsel as a matter of law under Strickland. So I don't see how the government could appeal that. I guess the better way to say it would be... I mean, did you make an argument? I didn't really see that in the briefs. No, we did not argue that point in the brief. So maybe it's more of a waiver issue than whether you appeal. We simply held that if the district court was going to remand this, or we simply requested that if the district court was going to remand this for an evidentiary hearing before the district court, that the district court in its discretion could examine whether defense counsel was actually deficient. We would request the evidentiary hearing to address that as well. I think also moving to whether she could actually show she could rebut the intended loss under Popov, the three documents she submits in support of her supplemental declaration show that she simply cannot do that. If you look at Exhibit J, you can find that at Site 223 to 228, and similarly Exhibit K, 229 to 230. Those documents are basically Medicare appeals. One is a decision, one is just showing that Ms. Schafforian could appeal. They basically show that Ms. Schafforian knows how to appeal a Medicare decision. The explanation of benefits attached to those documents show an allowed amount of zero and a pain amount of zero. They simply do not show that Ms. Schafforian is familiar with Medicare's fixed-fee billing. Hold on a second, though. You argued before that she was key, the government argued before, to this whole thing and gave her a four-level enhancement because of her great involvement in all of this, and now you're arguing she didn't know what she was doing and we've got a discount on that. That seems a little inconsistent. Well, the organizer-leader enhancement is going to a different point. That's showing her role regarding her relative responsibility, and there's evidence showing that she was paying marketers and that she was in the Medicare billing process. She would fill out the super bills, which is a checklist of forms indicating that various services were provided. She would complete other falsified documentation. She would obtain beneficiary signatures and then write future dates next to their names suggesting that certain services were rendered when they were not in fact. She would put this documentation together and forward that documentation to the billing company that actually billed Medicare. So she's not actually billing Medicare herself. Right, but counsel, I mean, the level of sophistication required to understand that when you ask Medicare for X dollars, they give you less than X, strikes me as not especially high, and it doesn't seem at all implausible that she would have understood that. Well, I think there's, you know, if we look at Exhibit I, for example, which is an explanation of benefits form that she and her counsel acknowledged that she made those handwritten notations at the time she filed her motion in the 22-5 litigation. There's no claim that she made those, that she was familiar with. She can't claim based on that document she was familiar with the intended loss presumption or that she did not receive, she was not familiar with Medicare's fixed fee billing because she made those notations at the time she filed her reply in the district court during her 22-55 litigation. They were not made during her multi-year, multi, her participation in her multi-year, multi-million dollar healthcare fraud conspiracy. There's also evidence in the record based on her initial, oops, no, keep going, in her 22-55, her first 22-55 proceeding was focused on her, her somewhat difficulty with her, the English language, that the fact that the plea agreement was never translated to her. And I think that raises a question before the court, can she really understand looking at these Medicare documents that she knew that Medicare did not receive, pay the full amount? So, actually, I think everything you've said actually supports what you're hearing. But, but setting that aside, let me just ask this one final question. Let's assume that the district court, I think he had to take, at this point, take her statement that she understood she was only going to get $1.7 million or recover $1.7 million. Let's assume that he viewed that as accurate. Is there a way under Popov where he could have still imposed the $4.5 million loss? If she submits an affidavit and says I only intended to collect $1.7 million and I understood that because I understand all of the why she may not, why that may not be accurate. But as I read it, the district court has to, absent holding an evidentiary hearing, the district court has to accept her statement in her affidavit as correct. Is there a way that he can accept her affidavit that she knew she was only trying to defraud out of $1.7 million and still get to a $4.5 million loss under the Popov case? I don't think so, but I think the court could disregard her declarations based on credibility findings that this court could find looking at the record. We ask that the district court affirm on the prejudice count. Thank you, counsel. I'm going to try to make three points real quickly. So very last point that was made is that there is no way to do this without a credibility finding. And the standard for finding credibility or for requiring an evidentiary hearing is so low that I think that alone satisfies the question. Yes, there were questions about timing. Yes, she didn't make notes contemporaneous with her billing practice. Yes, there's questions. Sue, can I ask you about this? Are we going through a futile effort here? We send it back down, the district court holds an evidentiary hearing and say your client is even successful in getting the two point, I guess that would put it to a 21 grade range. The sentence that was imposed was still within that range. So does that enter into our analysis at all on whether there was prejudice or do we say, no, you've got to just do this right from the get go if we find that there is error and if the sentence ends up being the same, so be it. So I do think that it matters what the guideline was. The difference in the guideline range would have been nine months, just for clarity purposes. She's already into over service of that time today. Well, hold on. I understood that she was, do I have this wrong, 45 months that she got? What did she? She got 46 months. She got 46, but that was the low end of the 23. But if she goes down to 21, which is what we're talking about here, then 37 to 46. Yeah. So she's still within that range. Notably in the plea agreement, the government committed itself to a low end recommendation. So therefore it does matter. Real quickly, all these questions about, well, what should she have put on to show that she could have gotten a plea agreement? Of course she doesn't have contemporaneous emails showing that her counsel asked for a lower loss amount and it was turned down. There's a would have happened in this alternate universe where counsel knew the things he was supposed to know. There's never going to be much objective evidence of that. And so what we have to do is base it on what we have. And here we have these alternate plea agreements, which Rodriguez Vegas say are one way of establishing that you could have gotten a better plea agreement. If there is a resentencing in this case, could the government get rid of all the agreements they made and ask for high end? If the government gets rid of its plea agreement, the government gets rid of its plea agreement. She has to negotiate again. I think there would be questions of vindictiveness if they suddenly asked for, you know, a stat max sort of sentence in this case. But of course, once you breach a plea agreement, once you undo a plea agreement, you undo a plea agreement. But they could also argue that evidentiary hearing that there was no ineffective assistance of counsel. That would re-raise that issue. So that's the last point. And I know I'm real tight, but can you revisit prong one was the question that you had Judge Nelson. And I think for two reasons now, one is that the government, they wouldn't have had to cross the field, but they could have argued in their brief that there was an alternate ground for the district court's ruling. They didn't do that. And by doing that, they waived that. That's the McHenry case, 659 F3rd 893. They've now waived that. That's now law of the case. And so I don't think that that would be revisited in an evidentiary hearing if one were ordered. The second point on that is that they haven't contested any fact related to the defense counsel's declaration. There's no question of fact that would remain for an evidentiary hearing. And I'm now over. So unless there's questions, I'll submit. Thank you. Thank you. Thank you both counsel for answering a lot of questions from all three of us.
judges: Owens, Nelson, Miller